UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM ROTH, | Case No.: 20-cv-00256-BJR |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| CNR PRODUCTS, INC., *et al*., | |
| Defendants. | |

## I.      INTRODUCTION

Before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 5. Plaintiff opposes the motion. Dkt. No. 9. Having reviewed the pleadings, the record of the case, and the relevant legal authorities, the Court will grant in part and deny in part the motion. The reasoning for the Court's decision follows.

## II.      FACTUAL BACKGROUND

Plaintiff William Roth ("Plaintiff") alleges that in January 2014 he was hired as the Vice President of Sales for Defendant CNR Products, Inc. d/b/a Three Cheers for Girls ("CNR"). Dkt. No. 5, Ex. A (Complaint for Damages and Demand for Immediate Payment of Bonus Due

("Complaint")) at ¶ 3.3. Plaintiff claims that he was initially given a informal verbal offer, which included a base pay rate, bonuses, and partial ownership in the partnership. ¶¶ 3.1, 3.9. Plaintiff further alleges that "[l]ater that same month, [he] received a formal offer which included an offer of partnership" as promised in the verbal offer. *Id*. The Complaint does not specify whether this "formal offer" was in writing, nor does Plaintiff attach any documents to the complaint.

Plaintiff claims that "[a]s part of his consideration of the employment offer" he requested a copy of CNR's financial records so that he could assess the financial strength of the company. *Id*. at ¶ 3.2. Plaintiff states that he was provided with "limited information" and the "records reflected a substantial amount of debt owed by CNR to Key Bank, the company's banking institution." *Id*. Plaintiff alleges that when he questioned CNR's Chief Financial Officer about the debt, he was reassured that CNR was "profitable and financially sound". *Id.* According to Plaintiff, these representations about CNR's financial stability, as well as the promise that he would receive partial ownership in CNR, "guided [him] to accept" the employment offer. *Id*. at ¶ 4.34.

Plaintiff claims that he excelled in his position as an executive sales officer and that he increased the company's sales by nearly a million dollars. *Id*. at ¶ 3.4. However, Plaintiff alleges, he soon came to learn that "Defendants' representations regarding [CNR's] financial stability was [*sic*] grossly inaccurate" and that CNR was not nearly as financially stable as had been represented to him. *Id*. at 3.5. Indeed, Plaintiff alleges, in 2015 CNR failed to pay him most of the quarterly and annual bonuses to which he alleges he was entitled. *Id*. at ¶ 3.6.

Plaintiff claims that he became concerned that he would not receive his stake in the partnership as he had been promised when he was hired and began negotiating the terms of the partnership transfer with the owner of CNR. *Id*. at ¶¶ 3.10-3.11. However, Plaintiff alleges, the

parties were not able to agree on the terms and "when [he] requested his 40% company stake be clearly defined in a legal document, [CNR's owner] refused to make her assurance [that Plaintiff would be awarded a 40% stake in the company] formally binding." *Id.* at 3.12.

At some point near the end of 2018, Plaintiff alleges that Defendants informed him that they intended to sell CNR by the end of 2019. *Id.* Plaintiff claims that Defendants "repeatedly assured [him] that he would receive 40% of the net proceeds from any sale of the company." *Id.* However, Plaintiff alleges, instead of following through on their promise, Defendants fired him in December 2019. *Id.* at ¶ 3.13.

Plaintiff instituted this action in King County Superior Court on February 7, 2020, alleging the following claims: (1) outrage and intentional infliction of emotional distress; (2) wrongful termination in violation of public policy; (3) civil conspiracy; (4) age discrimination; (5) violation of Washington's wage laws; (6) that CNR's corporate veil should be pierced; (8) breach of contract; and (9) negligent misrepresentation. *William Roth v. CNR Products, Inc. et al.* Case No. 20-2-03457-6 SEA. Defendants removed the action to this Court on February 9, 2020 and subsequently filed the instant motion to dismiss. Dkt. Nos. 1 & 5. The motion is now ripe and ready for this Court's review.

### III.   DISCUSSION

Defendants move to dismiss each of Plaintiffs' claims pursuant to Federal Rule 12(b)(6). Dkt. No. 5. Plaintiff opposes the motion as to some of the claims but concedes that this Court should dismiss the following claims: (1) outrage and intentional infliction of emotional distress; (2) wrongful termination in violation of public policy; (3) age discrimination, and (4) the request

to pierce CNR's corporate veil. Dkt. No. 9 at 13. Accordingly, Court will dismiss those claims and address the remaining claims below.[1]

### A.    Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. On a Rule 12(b)(6) motion, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Syntex Corp. Sec. Litig*., 95 F.3d 922, 926 (9th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.    The Breach of Contract Claim

Plaintiff alleges that the parties "entered into a binding agreement for services to pay Plaintiff for the work he performed for CNR." Complaint at ¶ 4.27. Plaintiff further alleges that "Defendants violated their contractual obligations to [him] by refusing to properly compensate [him] for his work." *Id*. at ¶ 4.28. Although not readily apparent from the breach of contract

---

[1] Plaintiff requests that these claims be dismissed without prejudice but offers no response to Defendants' allegations of deficiencies with these claims, nor any explanation as to why he should be permitted to refile the claims at a later date. Thus, the Court will dismiss the claims with prejudice.

1   claim as it is alleged in the Complaint, Plaintiff's opposition brief makes it clear that he also

2   believes Defendants breached the parties' agreement when they failed to award him partnership

3   interest in CNR. Dkt. No. 9 at 7.

4        Defendants move to dismiss the breach of contract claim, arguing that the Complaint fails

5   to allege the existence of a valid contract. Specifically, Defendants point out that the Complaint

6   never alleges the existence of a written agreement, nor does it identify the "actual rights and

7   obligations of the parties under the supposed agreement." Dkt. No. 5 at 14. In short, Defendants

8   argue, Plaintiff's breach of contract claim cannot exist because the Complaint fails to allege the

9   existence of a valid contract.

10       This Court has reviewed the Complaint and concludes that it fails to allege the existence

11  of an enforceable contract. Under Washington law, a contract requires mutual assent to its

12  essential terms in order to be binding. *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1259 (9th Cir. 2013).

13  The Complaint alleges that in return for Plaintiff acting as CNR's Vice President of Sales,

14  Defendants would pay Plaintiff an annual salary of $125,000, quarterly bonuses of $5,000, an

15  annual bonus of $15,000, and a potential performance-based bonus of $15,000. Complaint at ¶¶

16  3.1, 3.3., and 3.6. However, the Complaint also alleges that the employment agreement included

17  a right to partial ownership of CNR. *Id.* Indeed, the Complaint makes clear that the partnership

18  offer was a key reason why Plaintiff accepted the employment offer from Defendants. *Id.* at ¶

19  4.34.

20       Even drawing all reasonable inferences in favor of Plaintiff as this Court is required to

21  do, the Court concludes that the Complaint does not allege the existence of an enforceable

22  agreement with respect to Plaintiff's alleged ownership interest in CNR. Instead, the Complaint

23  details a history of failed negotiations regarding this issue. *See* Dkt. No. 5, Ex A at ¶ 3.10

5

(alleging that Defendants offered Plaintiff "phantom shares" in CNR, which he declined); ¶ 3.11 (alleging that the parties attempted to negotiate an agreement to provide Plaintiff with common stock in CNR but "Defendants refused to pay for an appraisal"). Indeed, the Complaint alleges that Defendants "refused" to make Defendants' assurances regarding the partnership interest "formally binding." *Id*. at ¶ 3.12. Simply put, the Complaint fails to allege a mutual meeting of the minds between Plaintiff and Defendants on the terms of Plaintiff's ownership interest in CNR. Without a meeting of the minds, there can be no valid contract. *In re Marriage of Obaidi and Qayoum*, 226 P.3d 787, 791 (Wash. Ct. App. 2010) (a valid contract requires a meeting of the minds on the essential terms).

Plaintiff claims he has "communications confirming that indeed a contract was formed and later modified to its current state by the parties" and further states that he "may amend the Complaint if the Court is inclined so as to attach such aforementioned exhibits." Dkt. No. 9 at 7. Federal Rule of Civil Procedure 15(a)(1) confers a right to amend on parties so long as it is timely filed, in this case 21 days after service. *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015). Because more than 21 days has passed since Plaintiff served his complaint, he may only amend with Defendants' written consent or this Court's leave. *Id*. citing Rule 15(a)(1)-(2). Under Rule 15(a)(2)'s liberal approach, leave to amend may only be denied on the grounds of bad faith, undue delay, undue prejudice to the opposing party, or futility of the proposed amendment. *Lockheed Martin Corp. v. Network Solutions, Inc*., 194 F.3d 980, 986 (9th Cir. 1999).

The Court has two qualms about Plaintiff's request to amend. First, it can hardly be called a "request". Plaintiff never formally moves to amend; indeed, he fails to even cite to authority allowing such an amendment. Second, given the Complaint's allegation that

6

Defendants refused to commit the alleged partnership agreement to writing, the Court finds it highly likely that amending the Complaint as to this issue will be futile. Nevertheless, given Rule 15(a)(2)'s liberal standard, the Court will allow Plaintiff the opportunity to amend the Complaint. Therefore, the Court will dismiss the breach of contract claim, with leave to amend.

**C.      The Negligent Misrepresentation Claim**

Plaintiff alleges that Defendants falsely misrepresented to him that CNR was financially stable and that this "false information regarding CNR's financial stability [] induced Plaintiff into accepting Defendants' employment and partnership offer." Dkt. No. 5, Ex. A at ¶ 4.34. Defendants argue that the Plaintiff's negligent misrepresentation claim is not viable because it is barred by the statute of limitations. Defendants note that the Complaint alleges that Defendants supplied Plaintiff with the allegedly misleading information in late 2013 or early 2014 and he became aware the information was misleading in 2015. Given that Plaintiff did not initiate this action until February 2019, Defendants claim that there can be no dispute that the negligent misrepresentation claim is barred by Washington's three-year statute of limitation for claims of fraud under RCW 4.16.080(4).

The Court agrees with Defendants that the negligent misrepresentation claim is time-barred with respect to the alleged misrepresentation regarding CBR's financial stability. The Complaint concedes that Plaintiff became aware of the alleged misrepresentation in 2015 when Defendants allegedly informed him that "he would not be paid his bonuses" "due to CNR's financial troubles." Complaint at ¶ 3.6. A negligent misrepresentation claim must be commenced within three years of discovery of the misrepresentation under Washington law. *Pifer v. Bank of America, N.A.*, 2019 WL 4037935, *2 (W.D. Wash. August 27, 2019) (citing *Davidheiser v. Pierce Cty.*, 960 P.2d 998, 1003, n. 5 (Wash. Ct. App. 1998)). Given that the Complaint alleges

1   that Plaintiff was placed on notice of the allege misrepresentation no later than December 2015

2   and given that Plaintiff did not institute this action until February 2019, the negligent

3   misrepresentation claim, to the extent that it relies on allegations regarding Defendants' alleged

4   misrepresentation regarding CNR's financial stability, is time-barred.

5          However, the Complaint also alleges that Defendants induced Plaintiff to accept

6   employment with CNR by falsely claiming that they would award him a partnership interest in

7   the company: "Defendant[s] knew or should have known that their communicated

8   misrepresentations of CNR's finances, as well as employment and *partnership offer*, was

9   reasonably relied upon by Plaintiff and indeed guided Plaintiff in his decision to accept

10  Defendants' offer." Complaint at ¶ 4.34 (emphasis added). While the Complaint alleges that

11  Plaintiff discovered CNR was not financially stable in 2015, it also alleges that Defendants

12  continued to misrepresent to Plaintiff that he would receive ownership interest in CNR until as

13  late as 2018. *Id*. at ¶ 3.12. Therefore, according to the Complaint, Plaintiff did not have notice

14  that Defendants misled him regarding the partnership interest until sometime after late 2018,

15  well-within Washington's three-year statute of limitations. Thus, Plaintiff's negligent

16  misrepresentation claim, to the expect it relies on Defendants' alleged misrepresentation

17  regarding the partnership offer, is not time-barred.

18          **D.     The Washington Wage Claim**

19          Plaintiff alleges that Defendants violated Washington's wage claim law, RCW 49.48.010,

20  by withholding wages owed to him. Complaint at ¶ 4.23. However, in the context of this claim,

21  the Complaint describes the withheld wages as "payment of the bonus he had been promised in

22  lieu of the 40% interest in [CNR]." *Id*. As this Court has already concluded, the Complaint fails

23

1  to allege an enforceable agreement with respect to Plaintiff's alleged ownership interest in CNR.

2  Therefore, this claim must be dismissed.[2]

3      **E.      The Civil Conspiracy Claim**

4          Plaintiff alleges that Defendants participated in a civil conspiracy against him in violation

5  of RCW 49.60.210. Complaint at ¶ 4.11. Section 49.60.210 makes it unlawful to terminate an

6  individual's employment because the individual opposed a discriminatory practice or was a

7  whistleblower. The Complaint makes no allegation that Plaintiff was a whistleblower, nor does

8  he refer to it in his opposition brief.

9          Once again, Plaintiff half-heartedly requests to amend the Complaint with respect to this

10  claim. Plaintiff states that the amendment will make clear that his civil conspiracy claim is based

11  on Defendants' alleged conspiracy to entice Plaintiff to work for them, while unlawfully

12  withholding unpaid wages. Dkt. No. 9 at 13. Even construing these proposed allegations in

13  Plaintiff's favor, they do not comprise activities that could be construed as opposing

14  discriminatory practices or acting as a whistleblower. *See Swartz v. KPMG LLP*, 476 F.3d 756,

15  761 (9th Cir. 2007) (dismissal with prejudice is appropriate where no set of facts that could cure

16  the deficiencies in plaintiff's claims). Thus, the Court denies Plaintiff's motion to amend this

17  claim.

18              **IV.      CONCLUSION**

19          For the foregoing reasons, the Court HEREBY GRANTS in part and DENIES in part

20  Defendants' motion to dismiss. Dkt. No. 5. The Court HEREBY GRANTS THE MOTION AND

21

22  [2] Plaintiff requests leave to amend the complaint to bring a wage claim pursuant to RCW 49.52.050 (intentional or willful withholding of wages), 49.52.070 (double damages), and 49.48.030 (attorney's fees). Dkt. No. 9 at 11. While

23  such claims would not be viable under the Complaint as it currently stands, because this Court is allowing Plaintiff the opportunity to amend the breach of contract claim, it will also allow Plaintiff to amend the complaint to add a cause of action pursuant to the foregoing provisions, if such a cause of action is viable under the amended breach of contract claim.

DISMISSES with prejudice the following claims: (1) outrage and intentional infliction of emotional distress; (2) wrongful termination in violation of public policy; (3) age discrimination, (4) the request to pierce CNR's corporate veil, and (5) the civil conspiracy claim. The Court further DISMISSES with leave to amend the following claims: (1) the breach of contract and (2) the wage claim. The Court HEREBY GRANTS in part and DENIES in part the motion as to the negligent misrepresentation claim.

Dated this 11th day of May 2020.

Barbara Jacobs Rothstein
U.S. District Court Judge