UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM ROTH,<br><br>        Plaintiff,<br><br>v.<br><br>CNR PRODUCTS, INC., *et al.*,<br><br>        Defendants. | CASE NO. 2:20-cv-00256-BJR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND REQUEST FOR FEE AWARD |

## I. INTRODUCTION

Before the Court is Defendants' second Motion to Dismiss. Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) and Request for Fee Award, Dkt. No. 23 ("Second MTD"). The Court previously granted in part and denied in part Defendants' first Motion to Dismiss, but granted Plaintiff leave to amend his Complaint. *See* Order Granting in Part and Den. In Part Defs.' Mot. to Dismiss, Dkt. No. 12 ("MTD Order"). Having reviewed the current Motion, the opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant dismissal of Plaintiff's action but deny Defendants' request for attorney's fees and costs. The reasoning for the Court's decision follows.

## II. BACKGROUND

The Court recounted the facts of this case in its previous order. *See* MTD Order at 1–3.

1

Briefly, Plaintiff worked as the Vice President of Sales for Defendant CNR Products, Inc. d/b/a/ Three Cheers for Girls ("CNR") from January 2014 to December 2019 when the company was sold. Second Am. Compl., Dkt. No. 18 ("SAC") ¶¶ 1.1, 3.6, 3.25. Prior to its sale, CNR was jointly owned by Defendants Cinthia Russiyan, who served as CNR's President, and Nicholas Russiyan. *Id.* ¶¶ 1.3, 3.1. Plaintiff claims that when he was hired, he received a formal, written offer including terms for salary, bonuses, and a partnership stake in the business. *Id.* ¶ 3.2. He also alleges that certain representations were made to him about the financial stability of the company upon which he relied when accepting the offer. *Id.* ¶¶ 3.3–3.5.

In reality, according to Plaintiff, the financial health of the company was precarious. *Id.* ¶ 3.8. As matters got worse, Plaintiff claims he entered into an agreement with CNR's owners to receive a 40% ownership share in CNR via common stock. *Id.* ¶¶ 3.19–3.20 (citing SAC, Ex. A, Dkt. No. 18-1 at 1–2). When CNR's owners informed Plaintiff that they were thinking of selling the company, Plaintiff claims he and the owners modified their agreement so that he would receive 40% of the net proceeds from any sale in lieu of stock. *Id.* ¶ 3.23 (citing SAC, Ex. B, Dkt. No. 18-1 at 1–2). Plaintiff claims he never saw any of the compensation he was promised when the company was actually sold. *Id.* ¶ 3.26.

Plaintiff filed suit in King County Superior Court on February 7, 2020 advancing eight separate causes of action. *William Roth v. CNR Products, Inc. et al.*, Case No. 20-2-03457-6 SEA; *see also* Compl., Dkt. No. 1-2. The case was then removed to this Court on February 19, 2020, *see* Notice of Removal, Dkt. No. 1, where Defendants filed their first Motion to Dismiss, *see* Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Dkt. No. 5.

The Court granted in part and denied in part Defendants' Motion. *See* MTD Order, Dkt.

No. 12. Specifically, the Court: (1) dismissed four claims as uncontested, *id.* at 3, (2) dismissed Plaintiff's Breach of Contract and unlawful withholding of wages under RCW 49.48.010 claims with leave to amend;[1] (3) dismissed Plaintiff's Civil Conspiracy claim without leave to amend; and (4) granted in part and denied in part dismissal of Plaintiff's Negligent Misrepresentation claim. As to the Negligent Misrepresentation claim, the Court dismissed with prejudice any such claim premised on representations about CNR's financial stability made before 2015 as time-barred by the expiration of the statute of limitations. *Id.* at 7–8. The Court, however, allowed Plaintiff to replead a Negligent Misrepresentation claim premised on Defendants' alleged misrepresentation regarding an offer of partnership in CNR. *Id.* at 8.

Based on the foregoing, Plaintiff filed his Second Amended Complaint advancing only one cause of action: Negligent Misrepresentation. SAC ¶¶ 4.1–4.8. Defendants now move to dismiss this final claim and for attorney's fees and costs. Second MTD, Dkt. No. 23.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); MTD Order at 4. When reviewing a motion brought pursuant to Rule 12(b)(6), the Court views all well-pleaded factual allegations "in the light most favorable to the nonmoving party" and considers only the complaint, materials incorporated into the complaint by reference, and matters appropriate for judicial notice. *Abcarian v. Levine*, No. 19-55129, 2020 WL 5000077 (9th Cir. Aug. 25, 2020) (internal quotations

---

[1] Plaintiff submitted an amended complaint repleading both claims, *see* Am. Compl., Dkt. No. 14, but later stipulated to withdrawing these claims, *see* Min Order, Dkt. No. 17.

and citations removed). The Court need not, however, accept as true "legal conclusion[s] couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently state a claim under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In order to achieve plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.   DISCUSSION

### A. Negligent Misrepresentation

To prevail on a claim of Negligent Misrepresentation, a plaintiff must show by "clear, cogent, and convincing evidence" that

> (1) a defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in business transactions, (3) the defendant was negligent in obtaining or communicating false information, (4) the plaintiff relied on the false information supplied by the defendant, (5) the plaintiff's reliance on the false information supplied by the defendant was justified, and (6) the false information was the proximate cause of damages to the plaintiff.

*Baker Boyer Nat'l Bank v. Foust*, 436 P.3d 382, 388–89 (Wash. Ct. App. 2018) (citing *Lawyers Title Ins. Corp. v. Baik*, 55 P.3d 619, 623–24 (Wash. 2002)).

Plaintiff claims that CNR's owners negligently misrepresented that he would receive 40% of the proceeds from CNR's sale. *See* Pl.'s Response in Opp'n to Defs.' Second MTD, Dkt. No. 24 ("Response") at 4 ("Ms. Russiyan repeatedly reassured Mr. Roth, both verbally and in writing, that Mr. Roth would receive 40% of the net proceeds from the sale of CNR"); *see also* SAC ¶¶ 3.23, 4.5–4.6. According to Plaintiff, this 40% share of proceeds derived from a partnership

agreement he concluded with CNR's owners.

The Court finds that Plaintiff's repled Negligent Misrepresentation claim fails for much the same reason his original breach of contract claim failed; he has not shown the existence of an enforceable partnership agreement or action by which he actually took an ownership share in CNR and, therefore, could not have reasonably expected to benefit from its sale. *See* MTD Order at 4–7. As evidence of a consummated partnership agreement, Plaintiff relies on an email sent by Plaintiff to Ms. Russiyan, which discusses terms for a partnership agreement. SAC ¶¶ 3.19–3.20 (referencing SAC, Ex. A). However, upon examination it is clear that this email constitutes an offer for terms of a partnership purchase agreement. Plaintiff has failed to show an acceptance by Defendants. Plaintiff has never been able to show, nor does his Second Amended Complaint allege, that he actually purchased the stock or assets necessary to take an ownership share. Without a finalized agreement or affirmative step to give him ownership in the company, it is unreasonable for Plaintiff to have concluded he owned a stake in CNR and would, thus, benefit from its sale. *See Lawyers Title*, 55 P.3d at 624 (reliance is justified where "reliance was reasonable under the surrounding circumstances").

Plaintiff's reference to emails sent by Ms. Russiyan to Plaintiff, which he claims demonstrate her negligent misrepresentation that he would receive a benefit from CNR's sale, does not alter this conclusion. Specifically, Plaintiff relies on three emails, which are appended to his Second Amended Complaint, to argue that representations made therein demonstrate that Ms. Russiyan assured him a 40% share of the proceeds from CNR's sale. *See, e.g.*, SAC, Ex. B at 5 ("[o]nce all debt is paid off – 40% of the net proceeds goes to you and 60% goes to me and nick"), 6 ("[i]f you want to share the valuation you had done, it might help in this negotiation and of course

5

it would be in your best interest in terms of getting more dollars for your 40%"). Defendants point out persuasively that, taken in context, these comments represent Ms. Russiyan's opinion on "potential future outcomes" of a sale, once a partnership agreement with Plaintiff could be finalized. Defs.' Reply in Support of their Second MTD, Dkt. No. 25 at 3.

Even viewing these comments in a light most favorable to Plaintiff—as the Court must—reliance on them as proof of ownership and, therefore, a benefit from the company's sale, was patently unreasonable without an affirmative agreement with CNR's owners or acquisition of a single share or asset. Simply put, one does not so lightly gain part ownership of a company. Without an ownership share in the company, Plaintiff could not have reasonably expected to benefit from its sale. Plaintiff, therefore, has failed to state a claim for Negligent Misrepresentation and the Court will grant dismissal of this sole remaining claim.

### B. Attorney's Fees and Costs

Defendants argue they are entitled to attorney's fees and costs based on (1) Plaintiff's failure to follow the Court's previous orders and (2) based on Washington's long-arm statute. Second MTD at 13–15. As to the claim of failure to follow Court orders, Defendants point to the fact that the Prayer for Relief section of Plaintiff's Second Amended Complaint seeks double damages pursuant to RCW § 49.52.070 and reasonable attorney's fees pursuant to RCW § 49.48.030. SAC at 8 ¶¶ 3, 4. Both of these sections refer to the unlawful withholding of wages claim Plaintiff stipulated to dismissing, and for which the Court granted dismissal. *See* Stipulated Mot. to Withdraw Pl.'s Am. Compl., Strike Defs.' Mot. to Dismiss, and Authorize Pl. to File SAC, Dkt. No. 16; Min. Order, Dkt. No. 17.

Plaintiff, in response, admits that inclusion of reference to these sections was in error, but

argues the transgression is not severe enough to warrant a sanction of fees. Response at 11–13. The Court agrees. A simple Scrivner's error does not justify the sanction of attorney's fees and costs.

The Court also finds an award of that attorney's fees and costs pursuant to Washington's long arm statute, RCW § 4.28.185(5), is not warranted. That section provides that "[i]n the event the defendant is personally served outside the state . . . and prevails in the action, there *may* be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees." WASH. REV. CODE § 42.28.185(5) (emphasis added); *see also Scott Fetzer Co. v. Weeks*, 786 P.2d 265 (Wash. 1990). As the language of the statute makes clear, the Court has the discretion to determine if an award of fees is appropriate, even where a party has fulfilled the terms of the provision by prevailing in the action. *See Cabell v. Zorro Prods., Inc.*, No. 13-cv-00449, 2015 WL 11233121, at *1 (W.D. Wash. Mar. 23, 2015) (listing cases).

The purpose of the long arm statute's fee shifting provision is to balance "'recompensing an out-of-state defendant for its reasonable efforts' and deterring plaintiffs from invoking long-arm jurisdiction as a means to harass foreign defendants'" with "'encouraging the full exercise of state jurisdiction.'" *Id.* (quoting *Fetzer*, 859 P.2d at 1215). Thus, courts in this district have recognized that an award of fees is not appropriate where the plaintiff had "a reasonable basis for seeking the protections of this state's courts." *Id.* at *2 (listing cases). Balancing the interest of encouraging long arm jurisdiction against the interest of recompensing the out-of-state Defendants for their efforts, and taking into account the record of the case at hand, the Court finds that an award of fees in not appropriate. Even though the Court has determined that Plaintiff's suit should

be dismissed, the Court finds that bringing suit in Washington was not done to harass Defendants but, rather, was a reasonable place for Plaintiff to file his lawsuit. Plaintiff lived and worked in the State of Washington, and Defendants appeared to have known as much when hiring him. Thus, it was reasonable to bring suit in this State when an employment dispute arose. The Court will, therefore deny Defendants' request for attorney's fees and costs.

## V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss but DENIES Defendants' request for attorney's fees and costs.

DATED this 25th day of September, 2020.

*[signature: Barbara J. Rothstein]*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE